**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| KITTSON SPEIGHTS, SEVA THORNTON, LLC, GFTC-1, LLC, TROY LIVINGSTON, JULIE LIVINGSTON, JTL, INC., individually and on behalf of the class described below, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:21-cv-63 |
| vs. | ) ) ) | |
| STAC BIZNESS SOLUTIONS, LLC, | ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs, KITTSON SPEIGHTS, SEVA THORNTON, LLC, GFTC-1, LLC, TROY LIVINGSTON, JULIE LIVINGSTON, and JTL, INC., individually and on behalf of the class members described below, by and through their undersigned attorneys, complain against Defendant, STAC BIZNESS SOLUTIONS, LLC as follows:

**I. INTRODUCTION**

1. Stac Bizness Solutions, LLC ("Stac") is a bookkeeping firm whose principal Shawna Aho ("Aho") has a degree in accounting. Stac was retained by Seva Beauty, LLC ("Seva") as its bookkeeper and engaged in the preparation of Seva's financial disclosures used to sell franchises to Plaintiffs and the proposed class.

2. The disclosures prepared by Stac were woefully incorrect. Defendant's negligence in preparation of these statements resulted in a disclosure that indicated Seva franchises were very profitable. In fact, the franchises were abysmal failures and the vast majority of franchises suffer losses and close prior to completion of the initial term. Plaintiffs and the class purchased the failed franchises in reliance upon the faulty disclosures crafted by Stac.

1

## II. JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) and 28 U.S.C. § 1332.

4. Aggregate claims of individual Class Members exceed $5,000,000, exclusive of interest and costs and the individual claims exceed $75,000.

5. At least one Class Member is a citizen of another state. 28 U.S.C. § 1332(d)(1)(D).

6. Venue is proper in this district because Defendant resides in this District.

## III. THE PARTIES

7. Plaintiff, Kittson Speights ("Speights"), is an individual domiciled in and citizen of Colorado.

8. Speights was the sole member of two Seva franchises, Plaintiffs, SEVA THORNTON, LLC and GFTC-1, LLC, both limited liability companies organized and existing under Colorado law with their principal places of business in Colorado.

9. Plaintiff, Troy Livingston, is an individual domiciled in and citizen of Pennsylvania.

10. Plaintiff, Julie Livingston (Troy and Julie are collectively referred to herein as the "Livingstons"), is an individual domiciled in and citizen of Pennsylvania.

11. The Livingstons are the sole shareholders of Plaintiff, JTL, INC. a Pennsylvania corporation with its principal place of business in Pennsylvania.

12. Defendant, Stac, is, and at all times relevant to this action has been, a bookkeeping and payroll services company, doing business in Liberty County, Texas.

13.     Shawna Aho ("Aho") is, and at all times relevant to this action has been, the Owner of Stac, residing in The Woodlands, Texas. Aho, as Owner of Stac, performed bookkeeping and accounting services for Seva.

## IV.     CLASS ALLEGATIONS

14.     Plaintiffs bring this action pursuant to the provisions of Rules 23(a) of the Federal Rules of Civil Procedure, on behalf of themselves and the following proposed class:

> All persons or entities who purchased a Seva Beauty, LLC franchise in 2016 through 2018.

15.     Excluded from the Class are Stac; any affiliate, parent, or subsidiary of Stac; any entity in which Stac has a controlling interest; any officer, director, or employee of Stac; any successor or assign of Stac; any Judge to whom this action is assigned.

16.     The proposed Class comprise dozen of consumers throughout the nation, and is so numerous that joinder of all members of the Class is impracticable. While the exact number of Class Members is presently unknown and can only be ascertained through discovery, Plaintiffs believe that there are over two hundred and fifty Class Members based upon Seva's Franchise Disclosure Documents ("FDD").

17.     There are numerous questions of law or fact common to the members of the Class which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

   a.   Whether Defendant, acting individually or collectively with their agents, owed an extra-contractual duty of care to purchasers of Seva franchises; and

   b.   Whether Defendant breached its duty of ordinary care when preparing the franchise disclosure document in the course of their bookkeeping duties.

18.     This class action satisfies the criteria set forth in Fed. R. Civ. P. 23(a) in that

Plaintiffs are members of the Class; Plaintiffs will fairly and adequately protect the interests of the members of the Class; Plaintiffs' interests are coincident with and not antagonistic to those of the Class; Plaintiffs have retained attorneys experienced in class and complex litigation; and Plaintiffs have, through their counsel, access to adequate financial resources to assure that the interests of the Class are adequately protected.

19. Plaintiffs purchased Seva franchises during the class period. Counsel for Plaintiffs directly represents dozens of other class members who suffered the same harms.

20. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. It is economically impractical for most members of the Class to prosecute separate, individual actions;

   b. After the liability of Defendant has been adjudicated, the individual and aggregate claims of all members of the Class can be determined readily by the Court; and

   c. Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members that would substantially impair or impede the ability of other Class members to protect their interests.

21. Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class. Texas law applies to all claims regardless of the location of the individual class member, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class Members.

## IV. FACTS COMMON TO ALL COUNTS

22. Seva sells "fast-casual spa" franchises that provide brow-shaping, facial "threading," lash extensions, facial treatments, and various forms of skincare and similar treatments.

23. Plaintiffs and the proposed class members each purchased a franchise from Seva (the "Franchises") and started operations between 2016 and 2018.

24. Plaintiffs each relied on an FDD including an Item 19 financial disclosure that was drafted by Defendant.

25. Any verbal representations of profitability communicated by Seva matched what was included in the FDD prepared by Stac in order to comply with applicable franchise regulations and the provisions of the FDD itself.

26. FDDs are a heavily regulated disclosure intended to provide prospective franchisees with accurate information regarding the franchise they are purchasing.

27. The FTC Rules, 16 CFR 436.5, provides in pertinent part: "If the franchisor makes any financial performance representation to prospective franchisees, the franchisor must have a reasonable basis and written substantiation for the representation at the time the representation is made and must state the representation in the Item 19 disclosure."

28. Financial performance representations as contained in Item 19 of an FDD are one of the most important parts of such a document and can form a critical factor in the decision of a prospective franchisee to purchase or not purchase a franchise. Most franchisees place great import on reported results (whether gross sales, income or otherwise) contained in a formal document and will assume that the results reported are a fair presentation of past performance, have been prepared responsibly, and are not misleading.

29.     However, if those results have been prepared or presented negligently and are misleading, the prospective franchisee is at risk of having made a seriously erroneous decision to invest in the franchised business and might be faced with loss of his or her investment.

30.     Franchisors are prohibited from "cherry-picking" their best performing outlets for inclusion in the Item 19 disclosure. In the Statement of Basis and Purpose issued by the FTC when it amended the FTC Rule in 2007, the FTC noted its efforts to prevent cherry-picking the top performers and the standard of care for anyone preparing an Item 19 disclosure requires that if a franchisor discloses data from its best performing outlets, it must provide a corresponding sample of the worst performing outlets.

31.     In general, a franchisor may make a Financial Performance Representation ("FPR") based on a subset of outlets but only if the FPR based on the subset (a) has a reasonable basis, (b) is accurate, and (c) is not misleading.

32.     Under the FTC Franchise Rule and applicable state franchise laws, a franchise seller is prohibited from making an FPR unless it has a "reasonable basis" for the representation at the time it is made. Written factual information in the seller's possession must reasonably support the representation, as the FPR is likely to be understood by a reasonable prospective franchisee. The FPR must be based on the sort of factual information upon which a prudent businessperson would rely in making an investment decision.

33.     The Item 19 Disclosure prepared by Stac is governed by 16 CFR § 436.5 which provides:

> (3) If the franchisor makes any financial performance representation to prospective franchisees, **the franchisor must have a reasonable basis and written substantiation for the representation** at the time the representation is made and must state the representation in the Item 19 disclosure. The franchisor must also disclose the following:

(i) Whether the representation is an historic financial performance representation about the franchise system's existing outlets, or a subset of those outlets, or is a forecast of the prospective franchisee's future financial performance.
(ii) **If the representation relates to past performance of the franchise system's existing outlets, the material bases for the representation**, including:
**(A) Whether the representation relates to the performance of all of the franchise system's existing outlets or only to a subset of outlets that share a particular set of characteristics (for example, geographic location, type of location (such as free standing vs. shopping center), degree of competition, length of time the outlets have operated, services or goods sold, services supplied by the franchisor, and whether the outlets are franchised or franchisor-owned or operated).**
(B) The dates when the reported level of financial performance was achieved.
(C) The total number of outlets that existed in the relevant period and, if different, the number of outlets that had the described characteristics.
(D) The number of outlets with the described characteristics whose actual financial performance data were used in arriving at the representation.
(E) Of those outlets whose data were used in arriving at the representation, the number and percent that actually attained or surpassed the stated results.
(F) Characteristics of the included outlets, such as those characteristics noted in paragraph (3)(ii)(A) of this section, that may differ materially from those of the outlet that may be offered to a prospective franchisee.
....
**(5) If a franchisor furnishes financial performance information according to this section, the franchisor may deliver to a prospective franchisee a supplemental financial performance representation about a particular location or variation, apart from the disclosure document. The supplemental representation must:**
**(i) Be in writing.**
**(ii)** Explain the departure from the financial performance representation in the disclosure document.
**(iii)** Be prepared in accordance with the requirements of paragraph (s)(3)(i)-(iv) of this section.
**(iv)** Be furnished to the prospective franchisee.

34. The FTC Rule is the subject of much authoritative commentary detailing the exact standard of care applicable to Seva in its Item 19 preparation. The 2017 North American Securities Administrators Association ("NASAA") FPR Commentary delineates the standard of care for the use of subsets both generally and in specific circumstances. The Commentary re-confirms use of subsets is a permissible method of making a financial performance representation but only if the

franchisor has a reasonable basis for the selection of the subsets. In this case, Stac admitted in deposition testimony that the subsets were negligently chosen by Stac based on profitability only.

35. In the Statement of Basis and Purpose issued by the FTC when it amended the FTC Rule in 2007, the FTC noted its efforts to prevent cherry-picking the top performers as was negligently done here. The FTC Commentary provides that if a franchisor discloses data from its best performing outlets, it must provide a corresponding sample of the worst performing outlets. For example, if the subset includes the top 20% of the system, there must be disclosure of the bottom 20% of the system. Disclosure of the entire system's performance alone is not enough.

36. Stac was retained as Seva's bookkeepers and were also retained directly by numerous Seva franchisees including Speights.

37. Stac was not an agent or employee of Seva and operated independently as outside remote bookkeepers.

38. Stac knew the Item 19 disclosures it prepared as part of its bookkeeping for Seva would be relied on by hundreds of franchisees when choosing to purchase a franchise. Stac was tasked with preparing the Item 19 FDD disclosures for Seva.

39. The Item 19 FDD prepared by Stac was relied on by Plaintiffs when purchasing their franchises between 2016 and 2018.

40. Stac knew its bookkeeping work product, the Item 19 disclosure, was going to be given to Plaintiffs and the Class to induce them to purchase franchises.

41. Stac knew Plaintiffs would rely on the information contained in the Item 19 disclosure prepared by Stac.

42. Stac knew the disclosures needed to provide an accurate representation of the success, or in this case, failure of Seva franchises.

43. Stac offered to Seva to prepare disclosures limited to only the most profitable stores and prepared several draft groupings of successful franchises to include in the Item 19 disclosure.

44. Stac completed a disclosure limited to the most profitable stores as part of its bookkeeping duties for Seva knowing that it would not be an accurate representation of Seva's franchise system.

45. When engaging in its bookkeeping duties Stac cherry-picked the most profitable stores to include in the Item 19 disclosure in order to improve Seva's marking efforts.

46. Stac's principal, Shawna Aho stated in an email to Seva's President: "**Once I run the total P&L numbers, I want to only use the stores on Item 19 that result in the highest profit numbers**" and "I added eight studios to the report and it lowered the cash flow to 84,000. **So I would like to drop several of those locations and just run the Item 19 with a total of ten studios to get the cash flow up to 104,000**."

47. The Item 19 disclosures prepared by Stac erroneously indicated that the franchises were very profitable with total revenues in excess of $260,000 and that franchisees could earn profits in excess of $80,000.

48. The disclosures negligently prepared by Stac only included less than 10% of the stores and limited to the most profitable in direct violation of controlling regulations and the standard of care for anyone preparing an Item 19 disclosure.

49. In reality, the franchises during the relevant time period earned less than half the gross revenues of what was represented in Stac's disclosure and few earned any profits. Controlling regulations and the standard of care for individuals preparing an Item 19 disclosure required the disclosure of an accurate sampling of stores rather than cherry-picking the most profitable as done by Stac.

50. The franchises purchased by Plaintiffs were huge failures, just like the dozens negligently omitted from the disclosures prepared by Stac.

51. Plaintiffs relied on the FDD Item 19 disclosures prepared by Stac when choosing to purchase a Seva franchise based on the clear indication of future profits conveyed by the disclosure prepared by Stac.

52. Were it not for the Item 19 disclosures prepared by Stac, as part of its bookkeeping services, painting an inaccurate picture, Plaintiffs and the Class would not have purchased the franchises and suffered many millions in losses.

53. Plaintiffs invested their time and money into Seva's offer as communicated in their FDD based on the promise of over $500,000 in profits per franchise.

54. Stac concealed its involvement in drafting the Item 19 disclosures and refused to comply with valid subpoenas from Class members.

55. Stac's direct involvement in drafting the Item 19 disclosure was not discovered by Plaintiffs until on or about November 4, 2020 when Seva produced emails and testimony from Stac in another action.

56. Speights (Seva Thornton, LLC and GFTC-1, LLC) was induced to buy a Seva Franchise based on the FDDs prepared by Stac.

57. Speights closely reviewed the FDD prepared by Stac and based her decision to purchase a franchise on the facts conveyed in the Item 19 disclosure.

58. Speights agreed to purchase three franchises which were promised to yield a total of $1,500,000 in profits during the initial contract term. Instead of the profits as indicated in Stac's bookkeeping, Speights' losses totaled $443,554.

59. Speights was never a wealthy woman and used the life insurance proceeds paid when her husband died to fund the initial investment in the franchises.

60. Speights' tax returns show losses of $298,905 at one store and $144,649 at another.

61. The Livingstons (JTL, Inc.) were induced to buy three Seva Franchises based on the 2015 FDD prepared by Stac. They agreed to purchase three franchises which were promised to yield a total of $1,500,000 in profits during the initial contract term. Instead of the profits as indicated in Stac's bookkeeping, the Livingstons' losses totaled $292,102.

62. The Livingstons closely reviewed the Item 19 disclosure prepared by Stac, even having it reviewed by counsel, and based their decision to purchase a franchise on the facts conveyed in the Item 19 disclosure.

63. The Livingstons drew on their home equity and tapped $215,000 of their retirement funds to pay in pursuit of the pot of gold indicated in the negligently drafted Item 19 disclosure.

64. The Livingstons' tax returns show losses of $103,220 in 2016, $61,032 in 2017, and $127,850 in 2018.

## V. CLAIM

### COUNT I
### *Negligence Per Se*

65. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 64 of the Complaint as Paragraph 65 of Count I of the Complaint as though fully set forth herein.

66. Stac owed plaintiffs a duty to prevent foreseeable harm where they had actual knowledge that Plaintiffs would be relying on the representations made in the Item 19 disclosures prepared.

67. The FTC rules governing Item 19 disclosures are intended to protect consumers from the conduct alleged herein and a violation of these standards is negligence *per se*.

68. Stac breached its duty of ordinary care by:

   a. Violating FTC Rules by preparing a misleading Item 19 disclosure;

   b. Disregarding readily available facts when preparing a disclosure it knew Plaintiffs' would rely on when buying a franchise;

   c. Limiting the Item 19 disclosures to profitable stores despite actual knowledge that Plaintiffs would rely on the representations it made; and

   d. Was otherwise careless and negligent as alleged herein.

69. As a direct and proximate result of Stac's breaches of duty as detailed herein, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Proposed Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A. Determine that this action may be maintained and certified as a class action on a nationwide basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4); and that it designates and appoint Plaintiffs as Class Representatives, and appoint Class Counsel under Rule 23(g);

B. Award Plaintiffs and the Class Members injunctive relief requiring Stac to modify its internal processes to prevent similar breaches and harm in the future;

C. Award Plaintiffs and the Class Members their actual, compensatory and/or statutory damages, according to proof;

D. Award Plaintiffs and Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest; and

E. Award Plaintiffs and Class Members such other, further and different relief as the case may require; or as determined to be just, equitable, and proper by this Court.

> Respectfully submitted,
> **KITTSON SPEIGHTS, SEVA THORNTON, LLC, GFTC-1, LLC, TROY LIVINGSTON, JULIE LIVINGSTON, JTL, INC.**
> Plaintiffs
>
> By: */s/Alexander N. Loftus*
>     Attorney for Plaintiff

Alexander Loftus, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
C: 312.772.5396
alex@loftusandeisenberg.com

Dated: February 16, 2021